## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MOORE OIL COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | 2:07-cv-01475-JEO |
| ) | |
| D&D OIL COMPANY, INC., a ) | |
| corporation; SUPERIOR ) | |
| TRANSPORT, INC., a foreign ) | |
| corporation; THE PANTRY, INC., ) | |
| a foreign corporation; JARRETT ) | |
| SHADDAY, an individual; and ) | |
| LARRY MARTIN, an individual, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

Before the court is the motion of defendant Jarrett Shadday ("Shadday") to dismiss this action for lack of personal jurisdiction. (Doc. 8). The parties have been afforded an opportunity to brief the relevant issues. The court also held a hearing on the motion. Upon consideration, the court finds that the motion is due to be granted.

### I. BACKGROUND

#### A. Procedural History

The plaintiff, Moore Oil Company, Inc. ("Moore"), filed a complaint against defendant D&D Oil Company, Inc. ("D&D"), in the Circuit Court of Jefferson County, Alabama, on November 29, 2005, alleging that D&D induced William P. Pilato ("Pilato") and Hollywood Convenience Store, Inc. ("Hollywood"), to breach an exclusive motor fuel supply contract with the plaintiff (Count One). (Doc. 1-2 at pp. 96-98 ("Complaint")).[1] The complaint also alleged

---

[1] The plaintiff's state court complaint is located at document 1-2 (Exhibit A) in the court's record of the case.

that D&D "intentionally, willfully and maliciously" interfered with the business relationship between Hollywood and Moore for financial gain (Count Two). *Id.* at pp. 98-99. In a "Restated and Amended Complaint," Moore added defendants, Superior Transport, Inc. ("Superior"), The Pantry, Inc. ("The Pantry"), Shadday,[2] and Larry Martin ("Martin") (collectively "the added defendants"), and further defined its allegations concerning these defendants. (Doc. 2 ("Amended Complaint")).

The Amended Complaint alleges that the added defendants and D&D intentionally induced Hollywood to breach its contract with Moore (Count One); that they interfered with the business relationship between Hollywood and Moore (Count Two); that they fraudulently transferred assets of D&D by suppressing material facts from the plaintiff (Counts Three and Four); and, that they fraudulently conveyed assets of D&D (Count Five). *Id.*

The added defendants filed a "Notice of Removal" in this court on August 13, 2007, with the consent of D&D. (Doc. 1). Moore responded by filing a Motion to Remand. (Doc. 12). It was denied on November 14, 2007. (Doc. 20).

In the present motion, Shadday asserts that the complaint against him is due to be dismissed because he does not have the requisite personal contacts for the exercise of jurisdiction over him. (Doc. 8 at p. 1).

### B.  Factual History

Shadday is a former shareholder in D&D. (Shadday Dec. at ¶ 8).[3] D&D is a Georgia corporation with its principal place of business in Georgia. *Id.* The Pantry is a Delaware

---

[2]The amended complaint incorrectly identifies Shadday as "Chaddy". (Doc. 9-3 at ¶ 9).

[3]Shadday's declaration is attached as Exhibit A to document 8.

corporation with its principal place of business in North Carolina. *Id*. at ¶ 9. According to the Amended Complaint, D&D and another defendant, Superior Transport, "sold and delivered petroleum products to The Station in violation of the expressed [sic] terms of the exclusive contract between Hollywood and Moore Oil" in October through December 2004 and on January 1, 2005. (Amended Complaint at ¶ 5). The plaintiff further alleges that it sent D&D a letter around December 13, 2004, notifying D&D of the exclusive supply contract it had with Hollywood. *Id*. at ¶ 6. Despite this, Hollywood breached the exclusive supply agreement it had with Moore by attempting to convert the dealership into a "non-brand dealership and by purchasing petroleum products" from D&D and Superior. *Id*. at ¶ 7.

In February 2005, Shadday executed a Stock Purchase Agreement whereby he agreed to sell his interest in D&D to The Pantry "in exchange for valuable consideration." (Shadday Dec. at ¶ 9). The agreement was negotiated in North Carolina and Georgia. *Id*. The sale took place in Georgia during April 2005. *Id*. at ¶ 10.

Shadday is a resident and citizen of Georgia. *Id*. at ¶ 3. He does not regularly transact business in Alabama. *Id*. at ¶ 4. He has not entered into any contracts in Alabama. *Id*. He has no personal interest in and does not use, possess, or own any property in Alabama. *Id*. at ¶ 5. He does not have an agent in this State and does not sell any goods or services here. *Id*. at ¶ 6. Lastly, he is not licensed to do business here. *Id*. at ¶ 7.

According to the plaintiff, Shadday also owned a company called "CVSM2,"[4] which, in

---

[4]Contrary to this assertion, Shadday has submitted a "Certificate of Existence" from the Georgia Secretary of State demonstrating that the entity is CBSM II, LLC, a limited liability company organized under Georgia law. (Doc. 18, Ex. A).

turn, owned a lot of the stores[5] associated with D&D. (Doc. 15 at ¶ 1). The plaintiff also notes that Shadday was an officer, director, and shareholder in D&D, which had substantial dealings in Alabama.[6]

## II.  DISCUSSION

### A.  Standard of Review

When a non-resident defendant challenges personal jurisdiction, the plaintiff must establish a *prima facie* case of jurisdiction. *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). *See also Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). This burden is satisfied if the plaintiff presents sufficient evidence to withstand a directed verdict. *Consolidated*, 216 F.3d at 1291. In evaluating the evidence, the court must construe the

---

[5]This assertion is premised on the deposition testimony of Don Newton, "the designated representative" for D&D, which was as follows:

> Q. Who would own the [r]eal [e]state?
>
> A. That would have been broke [sic] down to Jarrett Shadday and Larry Martin were partner [sic] in a company called CVSM2, which owned a lot of the stores, and then a lot of them would be individuals that would have – other individuals we would have leased the store from.
>
> Q. Do you know how many of the Fifty-three Martin and Shadday through CVSM2 owned?
>
> A. Not off hand, I wouldn't have that.
>
> Q. Were some of these stores in the Birmingham area?
>
> A. Yes.
>
> Q. How many in Birmingham?
>
> A. We had three locations in what we'd call the Birmingham market.
>
> Q. And where were they located?
>
> A. One was on Tallapoosa Street. One was down off Highway 78. And then one was in Pelham right off of Interstate 75 [sic] in Pelham.

(Doc. 15 at ¶ 1).

[6]The plaintiff also states in very conclusory terms that Shadday was involved as a director "in the dissolution of that company in violation of the duties to Alabama creditors." *Id*. at ¶ 5.

plaintiff's allegations as true as far as they are consistent with the defendants' affidavits and depositions. *Id*. To the extent that the plaintiff's allegations are contradicted by the defendants' affidavits and depositions, the court is to construe all reasonable inferences in favor of the non-movant plaintiff. *Id*. *See also Morris*, 843 F.2d at 492 ("Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff.").

### B. Personal Jurisdiction – Background

In *Huey v. American Truetzschler Corp.*, 47 F. Supp. 2d 1342, 1346 (M.D. Ala. 1999), United States District Judge Myron H. Thompson stated as follows:

> When a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the fourteenth amendment to the United States Constitution. *See Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992), *cert. denied*, 507 U.S. 983, 113 S. Ct. 1577, 123 L. Ed. 2d 145 (1993). Because Alabama's long-arm provision, Ala. R. Civ. P. 4.2(a), authorizes the assertion of personal jurisdiction to the limits of the United States Constitution, a plaintiff may carry both these burdens by demonstrating that personal jurisdiction over the defendant meets the requirements of federal due process. *Id*. Due process requires, first, that the defendant have "certain minimum contacts" with the forum state and, second, that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 618, 110 S. Ct. 2105, 2114-15, 109 L. Ed. 2d 631 (1990) (quoting *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).[7]

The Supreme Court has identified two types of personal jurisdiction:

---

[7]Alabama's long-arm statute, ALABAMA RULE OF CIVIL PROCEDURE 4.2(b), provides that a non-resident defendant is within the jurisdiction of Alabama courts "when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . ." ALA. R. CIV. P. 4.2(b). The Supreme Court of Alabama has interpreted the reach of Rule 4.2(b) (formerly ALA. R. CIV. P. 4.2(a)(2)) as extending personal jurisdiction as far as federal due process will allow. *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001).

> specific and general. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466
> U.S. 408, 414-15 nn.8 & 9, 104 S. Ct. 1868, 1872 nn.8 & 9, 80 L. Ed. 2d 404
> (1984). General jurisdiction arises from a party's frequent contacts with the
> forum state unrelated to the litigation. *See id*. at 414 n.9, 104 S. Ct. at 1872 n.9.
> Specific jurisdiction derives from a party's contacts with the forum that are related
> to the cause of action. *Id*. at 414 n.8, 104 S. Ct. at 1872 n.8 . . . .

*See also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996), *citing Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

### C.   Analysis

The defendant contends that he "does not have sufficient contacts with the [S]tate of Alabama for this court to assert jurisdiction over him." (Doc. 8 at p. 3). Specifically, he states that jurisdiction over him may not be premised upon jurisdiction over CBSM II, LLC. (*Id*. at pp. 4-5 & Doc. 18 at p. 2). Still further, he asserts that his "contacts with Alabama are not so continuous or systematic as to justify asserting personal jurisdiction over him." (Doc. 8 at p. 6). The plaintiff counters that Shadday does have sufficient contacts with Alabama to warrant the exercise of personal jurisdiction over him. (Doc. 15 at p. 2). Moore premises this contention on Shadday's ownership of "real estate in Alabama or a partnership interest in an entity which owns real estate here" and because of his involvement as an officer, director, and shareholder in D&D.[8] (Doc. 15 at ¶¶ 4 & 5).

### 1. Specific Jurisdiction

The first question to be addressed is whether the court has specific personal jurisdiction over Shadday for purposes of this litigation. The answer to that question is no.

---

[8]The plaintiff further alleges in very conclusory terms that Shadday's "involvement as a Director in the dissolution of [D&D] in violation of the duties to Alabama creditors such as the [p]laintiff should itself be sufficient to meet the due process standard" for personal jurisdiction purposes. (Doc. 15 at ¶ 5).

Shadday does not have the requisite contacts with this State as a result of the underlying action for the court to exercise personal jurisdiction over him. His status as an officer, director, or shareholder in D&D or CBSM II, LLC, is not sufficient under the circumstances. *See Candy H. v. Redemption Ranch*, 563 F. Supp. 505, 513 (M.D. Ala. 1983) ("personal jurisdiction over corporate officers and employees in their individual capacity may not be predicated merely upon personal jurisdiction over the corporation itself; rather, a court must look to the individual and personal contacts, if any, of the officers and employees with the forum state"); *Thames v. Gunter-Dunn*, 373 So. 2d 640, 641-43 (Ala. 1979) ("jurisdiction over individual officers or employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself"); *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1258 (M.D. Ala. 2004) ("[a shareholder] may not be held liable for the actions of [a corporation] unless the corporate form is disregarded. Under Alabama law, the corporate form may be disregarded, that is, the corporate veil pierced, when the corporation is the alter ego of its owner.").[9] Additionally,

---

[9]*See also South Alabama Pigs*, 305 F. Supp. 2d at 1260:

> . . . . When dealing with a corporate officer in his individual capacity, personal jurisdiction 'may not be predicated upon jurisdiction over the corporation itself.' *Thames v. Gunter-Dunn*, 373 So. 2d 640, 641 (Ala. 1979). To exercise jurisdiction over corporate officers, the officers must have engaged in some activity that would subject them to the State's long-arm jurisdiction. *Id.* at 642. Acts committed by an officer as an agent of the corporation will not subject the officer to personal jurisdiction, unless the corporate form was a sham or facade intended only to protect the individual. *Id.* Officers may be subject to personal jurisdiction, though, if they have committed torts in Alabama, regardless of whether they acted within their corporate authority at the time the tort was committed. *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala. 1983) (Thompson, J.). An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama. *Thames*, 373 So. 2d at 643;

*Lanzi v. Ala. Dept. of Rev.*, 968 So. 2d 18, 22 (Ala. Civ. App. 2006):

> A nonresident's ownership of stock in a domestic corporation, without more, does not subject the nonresident shareholder to a state's judicial jurisdiction. *See Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977) (violation of the Due Process Clause). A nonresident's interest in a limited partnership is directly analogous to a nonresident's ownership of stock in a corporation; thus, by analogy, a nonresident's limited-partnership interest in a limited partnership domiciled within a state, without more, should not subject the nonresident limited partner to the state's taxing jurisdiction.

the sale of the D&D stock, which took place outside the State of Alabama, is similarly not sufficient.

## 2. General Jurisdiction

The next question is whether the court has general personal jurisdiction over Shadday premised on his frequent contacts with Alabama unrelated to his litigation. The answer to that question also is no.

"General jurisdiction exists whenever the defendant's connection with the forum state is 'continuous and systematic' – there need be no nexus between the forum and the litigation." *Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp. 2d 1293, 1297 (S.D. Ala. 2003) (quoting *Helicopteros Nacionales de Colombia*, 466 U.S. at 416). *See also Consolidated*, 216 F.3d at 1292 (general jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated). "[T]he due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction." *Consolidated*, 216 F.3d at 1292.

The plaintiff has not demonstrated, and the record does not show, that Shadday has the requisite contacts to warrant the exercise of general personal jurisdiction. Shadday does not live or work here. He does not personally own any property here. There is no indication that he personally transacts any business here. At most, he has an interest in a corporation or partnership that owns property in this state. However, as stated above, that corporate relationship is insufficient for the exercise of personal jurisdiction.

## 3. Discovery

To the extent that the plaintiff requests that the court defer ruling on the motion until it

has the opportunity to take the deposition of Shadday, the court finds that the present matter does not justify discovery. "While discovery on the question of personal jurisdiction is sometimes appropriate when there is a motion to dismiss for lack of jurisdiction, plaintiffs must first make a threshold showing that there is some basis for the assertion of jurisdiction. *Bangladesh Agricultural Development Corp. v. Transcontinental Imex, Inc.*, 1983 A.M.C. 1970 (S.D.N.Y. 1982); *Grand Bahama Petroleum Co. v. M.V. Kriti Sky and Kamelia Co.*, 1978 A.M.C. 1238 (S.D.N.Y.), *aff'd*, 580 F.2d 1044 (2d Cir. 1978)." *Monsanto Intern. Sales Co., Inc. v. Hanjin Container Lines, Ltd.*, 770 F. Supp. 832, 838-39 (S.D.N.Y. 1991), *modified on other grounds on reargument, affirmed*, 962 F.2d 4 (2d Cir. 1992). The former Fifth Circuit Court of Appeals[10] has stated that "[i]t is clear that, in a proper case, the District Judge has broad discretion to allow discovery on jurisdictional issues, *See* 8 C. Wright & A. Miller, Federal Practice and Procedures 2009 (1970) . . . ." *Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 443 (5th Cir. 1979).[11]

---

[10]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[11]*See also United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001):

> We have long held that "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997) (emphasis added); *accord Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255-56 (1st Cir. 1966). However, "that entitlement is not absolute." *Sunview*, 116 F.3d at 964. A plaintiff must be diligent in preserving his or her rights. *Id.* Moreover, even when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has "broad discretion to decide whether discovery is required." *Crocker v. Hilton Int'l Barb., Ltd.*, 976 F.2d 797, 801 (1st Cir. 1992);

*Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 64 (4th Cir. 1993):

> Discovery under the Federal Rules of Civil Procedure is, of course, broad in scope and freely permitted. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note. Yet we agree with the Court of Appeals for the District of Columbia Circuit that district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981). Although limited discovery may be warranted to explore jurisdictional facts in some cases, *see McLaughlin v. McPhail*, 707 F.2d 800, 806-07 (4th Cir. 1983) (per curiam), we cannot say that this was such a case. The district court did not abuse its discretion in denying further discovery when, as here, Mylan had ample opportunity to take discovery and the pleadings contained no

In this case, the plaintiff's argument that discovery is appropriate because the testimony of Mr. Don Newton that Shadday was a "partner in a company called CVSM2, which owned a lot of the stores" that were leased, including three in Birmingham, is simply insufficient. The record and the arguments at the hearing on the motion show that Shadday's ownership is through a corporation and not individually. The record is clear that Mr. Newton's conclusory statements during the deposition simply were incorrect. Nothing stated or offered at the hearing on the motion indicates otherwise.

To the extent the plaintiff argued at the hearing that it provided D&D written notice in

---

specific facts that could establish the requisite contacts with Maryland. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983), *cert. denied sub. nom. Naartex Consulting Corp. v. Clark*, 467 U.S. 1210, 104 S. Ct. 2399, 81 L. Ed. 2d 355 (1984); *McLaughlin*, 707 F.2d at 807. Accordingly, we uphold the district court's denial of further discovery.

*Donatelli v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 164 (D. Me. 2004) (The Court has broad discretion to permit or deny jurisdictional discovery (citing *Noonan v. Winston Co.*, 135 F.3d 85, 90, 94 (1st Cir. 1998)); *Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc*., 268 F. Supp. 2d 1, 15-16 (D.D.C. 2003):

> "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996). This Circuit has held that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE* [*New Media Services Inc. v. BellSouth Corp.*], 199 F.3d [1343], 1351 [(D.C. Cir. 2000)] (citing *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987)). However, "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *see also Acker v. Royal Merchant Bank & Finance Co.*, No. CIV. A. 98-00392, 1999 WL 1273476, *5 (D.D. Cir. Feb.10, 1999) ("Although discovery should be granted freely, it can be denied when the plaintiff has failed to present facts that could establish jurisdiction.").
>
> "This Circuit's standard for permitting jurisdictional discovery is quite liberal, and the Court finds that even though Plaintiff has not made out a prima facie case of jurisdiction as required by other jurisdictions, *see*, *e.g.*, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998), Plaintiff is entitled to jurisdictional discovery, *see In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (noting that the GTE court permitted jurisdictional discovery even though "plaintiffs had failed to establish a prima facie case of personal jurisdiction"). In fact, the *GTE* court permitted jurisdictional discovery even though it could not "tell whether jurisdictional discovery will help to sort out" the jurisdictional questions in the case. *GTE*, 199 F.3d at 1352. Given this statement from the Court of Appeals, this Court finds it hard to imagine a situation where a plaintiff could not "demonstrate[ ] that it can supplement its jurisdictional allegations through discovery." *Id.* at 1351. Furthermore, since there is no indication that Plaintiff's request is not made with the "good faith belief that such discovery will enable it to show that the court has personal jurisdiction over defendant," *Caribbean Broad. Sys.*, 148 F.3d at 1090, the Court finds, despite Plaintiff's paltry showing under all three theories of personal jurisdiction, it has no choice but to allow Plaintiff to "pursue precisely focused discovery aimed at addressing matters related to personal jurisdiction." *GTE*, 199 F.3d at 1352.

December 2004 of the offending conduct, that is not sufficient to subject Shadday to discovery in this case. Simply providing the notice to the corporation or the individual, without more, is insufficient to require discovery in this matter. Similarly, to the extent that the plaintiff alleges in conclusory terms that the sale of D&D stock involved fraudulent conduct by Shadday, that is insufficient. To find otherwise would simply allow counsel to speculate as to what might be found if discovery is permitted.

Thus, the court finds that discovery and the plaintiff's request for a stay of disposition of this motion are due to be denied.

### III. CONCLUSION

Premised on the foregoing, the court finds that Shadday's motion to dismiss (doc. 8) is due to be granted and the plaintiff's response to the extent it includes a request for discovery and a stay of disposition of the motion is due to be denied.

**DONE**, this the 22nd day of February, 2008.

_/s/ John E. Ott_

**JOHN E. OTT**
United States Magistrate Judge